**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD CADWALLADER,

    *Plaintiff*,

*v*.                                                                           CASE NO. 09-CV-10935

COMMISSIONER OF                                            DISTRICT JUDGE ANNA DIGGS TAYLOR
SOCIAL SECURITY,                                              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]


**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence fails to support the Commissioner's determination that Plaintiff is not disabled because Plaintiff has submitted evidence sufficient to satisfy the requirements of Listing 4.04B.  Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that the case be **REMANDED** to the Commissioner for an award of benefits.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at:  http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 16.)

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 15, 49.) Plaintiff's relevant employment history includes work as an auto salesman for seven years and an electronics salesman for seven years. (Tr. at 69.) Plaintiff last worked in 2002. (*Id.*)

Plaintiff filed the instant claim on May 6, 2005, alleging that he became unable to work on December 2, 2002. (Tr. at 49.) The claim was denied at the initial administrative stages. (Tr. at 37.) In denying Plaintiff's claims, the Defendant Commissioner considered ischemic heart disease, with or without angina, and disorders of back, discogenic and degenerative, as possible bases of disability. (*Id.*)

On May 14, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 11-25.) In a partially favorable decision dated November 14, 2007, the ALJ found that Plaintiff was disabled beginning February 1, 2005, and ending February 7, 2006. However, after the latter date, the ALJ concluded that medical improvement had occurred, which rendered Plaintiff no longer eligible for benefits. (Tr. at 23-25.) Plaintiff requested a review of this decision on December 5, 2007. (Tr. at 9.)

2

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 30, 2009, when, after the review of additional exhibits[2] (Tr. at 634-41), the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On March 13, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by

---

[2]Since it has been held in this circuit that the record is closed at the administrative law judge level, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, the "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, because district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin,* 475 F.3d at 730.

6

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 2, 2002. (Tr. at 19.) At step two, the ALJ found that Plaintiff's coronary artery disease, degenerative disc disease, and substance addiction were "severe" within the meaning of the second sequential step. (Tr. at 19-20.) At step three, the ALJ considered Plaintiff's alleged non-exertional impairments and found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 20.) At step four, the ALJ found that since February 1, 2005, Plaintiff lacked the residual functional capacity to perform his past relevant work. (Tr. at 20.) At step five, the ALJ found that Plaintiff was under a disability from February 1, 2005, through February 6, 2006, and that Plaintiff's substance use disorder was not a contributing factor to the finding of disability. (Tr. at 21-22.) The ALJ further found that medical improvement occurred as of February 7, 2006, and that since that date, Plaintiff has had the residual functional capacity to perform a limited range of sedentary work. (Tr. at 22-24.)

**E.     Analysis and Conclusions**

**1.     Legal Standards**

Once a finding of disability is made, the ALJ must determine the onset date of the disability and Social Security Ruling ("SSR") 83-20 governs that determination. It provides that:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset *only if it is consistent with the severity of the condition(s) shown by the medical evidence.*

SSR 83-20 at 1 (emphasis added). "[M]edical evidence serves as the primary element in the onset determination." *Id.* at 2. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 833 (6th Cir. 2004). SSR 83-20 goes on to provide that,

> [p]articularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. . . .
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.

(SSR 83-20 at 2.) The plaintiff must prove that he became disabled prior to the date selected by the Commissioner; the Commissioner is not required to disprove any earlier onset date, as long as the Commissioner's determination is supported by substantial evidence. *Besaw v. Sec'y of Health and Human Servs*, 966 F.2d 1028, 1030 (6th Cir. 1992); *Blankenship v. Sec'y of Health and Human Servs*, 874 F.2d 1116, 1121 (6th Cir. 1989).

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of sedentary work since February 7, 2006. (Tr. at 24.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that

involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### a.    Arguments of the Parties

Plaintiff contends that his cardiovascular impairment equates to Listings 4.04B and C(1) and (2). (Doc. 13 at 14-18.) Defendant counters that the medical evidence does not demonstrate that Plaintiff satisfied the requirements of Listing 4.04B because, although Plaintiff had three separate ischemic episodes requiring revascularization, they were not within a twelve month

9

period. However, Defendant then states that "Plaintiff underwent three vascularization procedures within about a four month period." (Doc. 16 at 17.) Defendant further argues that removal of sternal wires should not be considered revascularization. (Doc. 16 at 17.) Defendant also contends that Plaintiff has not met Listing 4.04C because there is no evidence that performance of exercise testing would present a significant risk to Plaintiff nor are there very serious limitations in Plaintiff's ability to initiate, sustain, or complete daily activities of daily living since Plaintiff was able to live on a farm, feed cows, and attend the University of Michigan. (Doc. 16 at 17-18.)

Plaintiff further contends that the ALJ and Appeals Council improperly discounted the medical evidence offered by Plaintiff's treating and examining doctor, Dr. Maria Goleba, as supported by the testimony of an examining doctor, Dr. Samiullah Sayyid, and instead improperly relied upon a non-examining doctor, Dr. Gupta Usha. (Doc. 13 at 18-19.) Defendant responds that the ALJ found Plaintiff was limited to standing/walking 4 hours a day, whereas "Dr. Goleba opined Plaintiff was not limited in sitting, standing, or walking." (Doc. 16 at 20.) Defendant further argues that the ALJ was reasonable in declining to rely on Dr. Sayyid's opinion because his opinion was not supported by his own examination findings. (*Id.*)

Plaintiff also argues that the vocational expert's testimony did not accurately reflect Plaintiff's impairments. (Doc. 13 at 20-23.) Defendant contends that the hypothetical accurately reflected Plaintiff's substantiated impairments and resultant limitations based on the evidence of record. (Doc. 16 at 21-22.)

    **b.**    **Medical Evidence**

    **i.**    **Back Pain**

In the instant case, the medical evidence shows that Plaintiff was treated by Vivekanand Palavali, M.D., for back pain and right leg pain. (Tr. at 91-92.) Plaintiff had undergone surgery

10

with Dr. Palavali in 2000, when an L5-S1 decompression and fusion was performed. (Tr. at 97, 99.)

In December 2004, Plaintiff sought emergency room treatment because he fell from a ladder. (Tr. at 97.) Dr. Palavali noted that he had not seen Plaintiff for "quite sometime." (Tr. at 97, 99.) Dr. Palavali concluded that, at that time, Plaintiff had "mostly myofascial pain" and that "[h]is complaint of entire left leg numbness is non-anatomical and cannot be explained, and also he has some Waddell signs with grimacing, groaning and moaning, and saying that he cannot raise both legs for which no explanation can be given." (Tr. at 97-98.) Dr. Palavali also "told him he needs to find a family doctor because there is no role for surgical intervention" and that "there is a possibility that he may have habituation of medications and he may need a psychology consultation . . . ." (Tr. at 98.)

An MRI of the lumbar spine taken in December 2004 showed "[n]o gross evidence of enhancing mass or other abnormality compressing the conus medullaris or the cauda equina" and "[n]o significant interval change and no evidence to suggest significant post-operative, recurrent LS HNP or spinal canal stenosis." (Tr. at 93.) Plaintiff was also examined in December 2004 by Xia Wang, M.D., who concluded that the MRI "did not show any nerve compression or cord compression" and that Plaintiff should simply "continue current pain medication." (Tr. at 102.)

Plaintiff was also treated by Kenneth Richter, D.O., for back pain. (Tr. at 504.) In September 2006, Dr. Richter noted that Plaintiff "has a lot of pain behaviors[,] clearly has a chronic pain syndrome[, and] . . . really needs to followup with Community Mental health . . . [because he] has really no existential purpose [and the doctor was] not finding anything neurologic." (Tr. at 445.) In September 2006, Dr. Richter noted that Plaintiff reported only chest

11

pain and did not have pain anywhere else in his body. (Tr. at 467.) In October 2006, Dr. Richter recommended a "psychiatric consult." (Tr. at 610.)

Plaintiff also sought treatment at the hospital for back pain in January 2005, January 2006, and May 2006. (Tr. at 172, 229, 363.) In 2005, a scan of the lumbar spine was normal, showing "disc spaces maintained," but also revealing "minimal levoscoliosis of the upper lumbar spine" and "some minimal calcification . . . within the abdominal aorta." (Tr. at 366.) In 2006, the physician noted "[r]ight sided lumbar radiculopathy" and instructed Plaintiff to apply ice intermittently. (Tr. at 229-30.) Upon discharge on January 30, 2006, the hospital noted "[a]typical chest pain" and "[a]nxiety." (Tr. at 210.)

In February 2007, Plaintiff sought treatment with Ann Marsh, M.D., for "severe back pain after having been rammed by a bull, in his back, he has no abrasions, no physical signs of trauma." (Tr. at 562.) The MRI taken at the time was "completely normal" and Plaintiff was discharged after "[h]e bargained for pain medicines." (Tr. at 562.) An MRI of the thoracic spine taken on February 17, 2007, was negative except for "facet arthropathy at L4-L5 with left neural foraminal narrowing." (Tr. at 570.)

### ii.     Cardiovascular Condition

Plaintiff was also treated by a cardiologist, David Dobies, M.D., who performed multiple cardiac catheterizations between 2004 and 2006. (Tr. at 105, 196, 200, 259, 275, 306, 327, 391, 416.) In August 2004, Plaintiff suffered a possible myocardial infarction. (Tr. at 165.) CT scans performed in January and February of 2005 showed "unstable angina." (Tr. at 362, 364.) Plaintiff had stents implanted in his cardiac arteries in August 2004 and April 2005. (Tr. at 327, 416.) In April 2005, it was also noted that Plaintiff's "substance abuse history [] may be a confounding

12

factor in [Plaintiff's] desire for admission" into the hospital.  (Tr. at 136.)  Plaintiff underwent coronary artery bypass surgery in early July 2005.  (Tr. at 296.)

Plaintiff suffered another possible myocardial infarction in January 2006.  (Tr. at 376.)  Later that month, the sternal wires implanted during the earlier bypass surgery were removed because of Plaintiff's "continued complaints of chest pain," which "was thought to be possibly due to the sternal wires."  (Tr. at 216, 220.)  In February 2006, Dr. Yaseen Hashish noted that Plaintiff's "prognosis is poor given his history of narcotic abuse and noncompliance, also his tobacco abuse with his known coronary artery disease makes his prognosis poor."  (Tr. at 198.)  That same month, Dr. Dobies noted that Plaintiff's "[e]jection fraction is well preserved with no significant valve disease."  (Tr. at 201.)

In July 2006, Rekha Khera, M.D., performed another left heart catheterization, coronary angiogram, and left ventriculogram.  (Tr. at 493.)  In September 2006, Plaintiff was treated by Abdul Halabi, M.D., who also performed a cardiac catheterization.  (Tr. at 438, 450.)  Dr. Halabi found Plaintiff's complaints of pain to be "very atypical in nature."  (Tr. at 437.)  A chest x-ray taken in September 2006 was negative and "unchanged from the previous study dated 8/31/06." (Tr. at 473, 599.)  M. DeGregorio, M.D., also performed a left heart catheterization, coronary angiogram, and left ventriculogram in October 2006.  (Tr. at 611.)  Dr. DeGregorio concluded that there was a "[n]ormal left ventricular ejection fraction," "[m]ild disease of the left main," "[c]ritical disease of the left anterior descending," "[w]idely patent internal mammary to the left anterior descending," "[c]ritical disease of the circumflex," "[w]idely patent saphenous vein graft to the obtuse marginal," "100% occlusion of the right coronary artery," and "[w]idely patent saphenous vein graft to the right coronary artery."  (Tr. at 612.)  Plaintiff was also treated by Jeffrey Harris,

13

D.O., for chest pain and unstable angina. (Tr. at 518-28.) Dr. Harris performed a left heart catheterization in February 2007. (Tr. at 532.)

During this time, Plaintiff also underwent a series of cardiac exercise stress tests. Tests performed in September and October of 2004 were normal. (Tr. at 399, 407.) Stress tests performed in January and July of 2005, the latter after his coronary bypass surgery, showed "no inducible ischemia by EKG criteria." (Tr. at 285.) In May 2006, a stress test showed "no definite evidence of reversible ischemic change" and the doctor noted that he "suspect[ed] a very small old nontransmural myocardial infarction affecting the mid anterior wall similar to prior studies" with "no significant wall motion abnormality with an injection fraction of 60%." (Tr. at 168.) A stress test performed in September 2006 showed "no EKG change or chest discomfort noted with the pharmacological infusion of Persantine," "[n]o inducible ischemia by electrocardiographic criteria" and "no evidence of MI or reversible ischemia." (Tr. at 151-53.) As of February 2007, a stress test showed that the left ventricular ejection fraction was 49% and that there was a "new" "small to moderate-sized moderately intense reversible defect of the septal anterior wall towards the apex . . . ." (Tr. at 547-48.)

### iii. Residual Functional Capacity and Administrative Hearing Testimony

A Residual Functional Capacity ("RFC") Assessment performed in July 2007 by Dr. Maria Goleba concluded that Plaintiff was able to occasionally lift up to 10 pounds, occasionally carry up to 10 pounds, perform simple grasping, pushing and pulling on the right but not on the left, and fine manipulation. (Tr. at 622.) Plaintiff was unable to bend, squat, crawl, climb, reach, stoop, or kneel. (*Id.*) It was also noted that Plaintiff should avoid any environmental issues such as moving machinery. (Tr. at 623.) Dr. Sayyid provided a medical source statement wherein he also concluded that Plaintiff could occasionally lift up to 10 pounds and occasionally carry up to 10

14

pounds. (Tr. at 627.) Dr. Sayyid also stated that Plaintiff could sit for one hour, stand for 30 minutes, walk for ten minutes without interruption, sit for three hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for one hour in an eight-hour workday. (Tr. at 628.) He further noted that Plaintiff used a cane to ambulate and could only walk for 20 yards without it, although he also stated that use of the cane was not medically necessary and that Plaintiff could use his free hand to carry small objects. (Tr. at 628.)

Dr. Sayyid's opinion also agreed with the RFC Assessment with respect to Plaintiff's inability to reach and his ability to frequently handle, finger, and feel, although Dr. Sayyid opined that Plaintiff could not push, pull, stoop, kneel, or crawl. (Tr. at 629-30.) Dr. Sayyid concluded that Plaintiff could occasionally be exposed to such environmental factors as humidity, dust, odors, fumes, extreme cold or heat and vibrations and that he could tolerate moderate noise levels. (Tr. at 631.) Dr. Sayyid also noted that Plaintiff could travel without a companion for assistance, could ambulate without a wheelchair, walker or 2 canes or crutches, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare simple meals and feed himself, care for his own personal hygiene, and sort, handle and use paper/files. (Tr. at 632.)

Plaintiff testified at the administrative hearing that he can stand for between 15-25 minutes, walk about 30 yards without being out of breath, sometimes has to use a cane or a walker, and that he can sit for 15-20 minutes before having to get up. (Tr. at 647-48.) Plaintiff further testified that he lives on his cousin's farm, his cousin does his laundry, cooking, and cleaning, but that he helps out every once in a while by "throwing like a pound of hay," and that he grocery shops about once a month. (Tr. at 650.) Plaintiff clarified that his injury caused by a bull on the farm occurred when he was giving the bull some hay. (Tr. at 658.) Plaintiff further indicated that he has not ingested any illegal drugs since February 2005. (Tr. at 660.)

The ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background

> who is limited to standing and walking four hours in an eight hour workday; can sit for up to eight hours in an eight hour workday; the person should not climb ladders, ropes, or scaffolds; can rarely climb stairs; rarely stoop; rarely is not never, but it's less than a third of a workday; assume a person who can rarely crouch; assume an individual who should not be exposed to hazards; there should be no concentrated exposure to fumes, dust, or gases; there should be no exposure to extremes of temperature or humidity; the person should not drive as a work duty; assume a person who should not do work that involves confrontation or negotiation; assume a person limited to doing work that's simple and routine.

(Tr. at 666.) The VE testified that such a person could not perform Plaintiff's former work but that such a person could perform work at the sedentary level, such as surveillance system monitor, and that these jobs exist in significant numbers in the region. (Tr. at 666.) The VE further testified that a person could use a cane and could have a sit/stand option whenever they want to in such jobs and that these jobs do not involve reaching overhead or using foot or leg controls. (Tr. at 667.) The VE further testified that typically such jobs allow only one missed day per month on average and the VE testified that the testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 667.)

    **c.    Application of Medical Evidence to the Parties' Arguments**

Plaintiff contends he meets Listings 4.04B and C(1). Plaintiff bears the burden to show his impairment meets or medically equals a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2002). Plaintiff's impairment must match all the specified medical criteria in order to show that the impairment meets a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). Plaintiff cannot rely on the "overall functional impact of his unlisted impairment or combination of impairments" to satisfy equivalence to a Listing. *Zebley*, 493 U.S.

16

at 531. Listing 4.04 applies to ischemic heart disease with symptoms due to myocardial ischemia. 20 C.F.R. Part 404, Subpart P, Appendix 1.

### i.     Listing 4.04C and Vocational Evidence

Listing 4.04C applies where the patient suffers from

> [c]oronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely drug-induced stress test, a [medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual . . . [r]esulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

Therefore, Plaintiff must present angiographic evidence showing narrowing of a coronary artery or graft vessel and other evidence that Plaintiff's coronary artery disease has caused "very serious limitations in [his] ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04C.

I suggest that substantial evidence supports the conclusion that Plaintiff could and did tolerate stress testing which revealed no inducible ischemia (Tr. at 151-53, 168, 285, 399, 407) and that there was substantial evidence of Plaintiff's ability to complete activities of daily living. (Tr. at 622, 627-32, 650-58.) I therefore suggest that, although the ALJ did not specifically mention this Listing (*see* Tr. at 20), the ALJ nevertheless properly determined that Plaintiff did not meet Listing 4.04C and therefore that this ground will not support summary judgment in Plaintiff's favor. *See Lusk v. Comm'r of Social Security,* 106 Fed App'x 405, 410 (6th Cir. 2004) (ALJ properly concluded that the plaintiff did not meet Listing 4.04 where, after bypass surgery, there was no medical evidence of "ongoing ischemia or symptoms from [plaintiff's] left ventricular dysfunction").

I further suggest that the ALJ did not discount the opinion of Dr. Sayyid. To the contrary, Dr. Sayyid's opinion regarding Plaintiff's limitations was expressly adopted by the ALJ in the hypothetical posed to the VE. Dr. Sayyid's medical source statement concluded that Plaintiff could occasionally lift up to 10 pounds and occasionally carry up to 10 pounds, sit for one hour, stand for 30 minutes, walk for ten minutes without interruption, sit for three hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for one hour in an eight-hour workday. (Tr. at 627-28.) Dr. Sayyid's opinion also agreed with the RFC Assessment with respect to Plaintiff's inability to reach and his ability to frequently handle, finger, and feel, although Dr. Sayyid opined that Plaintiff could not push, pull, stoop, kneel, or crawl. (Tr. at 629-30.) Although the hypothetical presented to the VE assumed a person "who is limited to standing and walking four hours in an eight hour workday; can sit for up to eight hours in an eight hour workday," the hypothetical also incorporated the requirement that the person be able to use a cane and have a sit/stand option whenever they want to in such jobs. (Tr. at 667.) I therefore suggest that the hypothetical posed to the VE accurately reflected the relevant medical opinions and Plaintiff's impairments and thus was supported by substantial evidence. I further suggest that these remaining arguments do not provide grounds for granting Plaintiff's motion for summary judgment.

  **ii. Listing 4.04B**

As mentioned, counsel for Plaintiff also argues that Plaintiff meets Listing 4.04B, which requires a showing of "[t]hree ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive twelve-month period (see 4.00A3e)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04B. "Revascularization means angioplasty

(with or without stent placement) or bypass surgery." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 400E(9)(f).

Although I am not sure how Defendant determined that Plaintiff underwent three vascularization procedures within a four month period (*see* Doc. 16 at 17), the evidence does show that Plaintiff underwent three procedures that qualify as "vascularization procedures" within a consecutive twelve-month period. Plaintiff underwent a cardiac catheterization and implantation of two stents in August 2004 (Tr. at 416), the "direct stenting of the circumflex and direct stenting of the left anterior descending with placement of a second stent" in April 2005 (Tr. at 327), and coronary artery bypass surgery in July 2005. (Tr. at 296.) I therefore suggest that Plaintiff is correct that the medical evidence shows that he meets the requirements of Listing 4.04B.

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041. *Accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 547 (6th Cir. 2004) (citations omitted). In this case, I suggest that the record adequately establishes that Plaintiff meets the listing and therefore is entitled to benefits. Moreover, as mentioned, the ALJ entirely failed to consider whether Plaintiff met any of the Listings for physical impairments. (Tr. at 20.) I

19

therefore suggest that reversal of the ALJ's decision and remand for an award of benefits is appropriate.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                             s/ *Charles E Binder*
                                           CHARLES E. BINDER
Dated: December 1, 2009                  United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 1, 2009                    By     s/Patricia T. Morris
                                                       Law Clerk to Magistrate Judge Binder